For reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be affirmed.

═══════════

(56 South. 548.)

No. 18,779.

SPEARING v. WHITNEY–CENTRAL NAT. BANK.

(Nov. 13, 1911.)

*(Syllabus by the Court.)*

1. BANKS AND BANKING (§ 143*)—DEPOSITS—LIABILITY OF BANK TO DEPOSITOR.

Where the checks of a depositor, not a merchant or trader, on a bank, were refused payment and protested for want of funds, when, in fact, the depositor had funds in the hands of the bank more than sufficient to pay said checks, the depositor will be entitled to recover such actual damages, general or special, as may be by him alleged and proven.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 414, 517; Dec. Dig. § 143.*]

2. BANKS AND BANKING (§ 143*)—DEPOSITS—LIABILITY OF BANK TO DEPOSITOR.

That the dishonor of the checks was the result of a clerical error in bookkeeping, and that the bank on the discovery of the error attempted to repair the injury occasioned by its mistake, are circumstances that will be considered in mitigation of damages. An action for damages for the dishonor of commercial paper is in the nature of an action for damages for slander.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 414, 517; Dec. Dig. § 143.*]

*(Additional Syllabus by Editorial Staff.)*

3. APPEAL AND ERROR (§ 53*)—DECISIONS REVIEWABLE—AMOUNT IN CONTROVERSY.

The amount in dispute on appeal as affecting the jurisdiction of the Supreme Court ratione materiæ is to be determined from the allegations and prayer of the petition, there being nothing in the nature of the case nor the conduct of the plaintiff to lead to the conclusion that he could not reasonably have expected to have recovered more than nominal damages.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 254–260; Dec. Dig. § 53.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Joseph H. Spearing against the Whitney-Central National Bank. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

Benjamin R. Forman, for appellant. Foster, Milling, Brian & Saal, for appellee.

LAND, J. The plaintiff sued the defendant bank to recover $10,000 damages to his credit, good name, and character for fair business dealings and probity, resulting from the dishonor and protest of his four several checks drawn on said bank, when, in truth and in fact, he had at the time a balance to his credit in said bank far exceeding the aggregate amount of said checks. The petition alleges, in substance, that the defend-

ant most wrongfully refused payment of said checks, and most wrongfully caused the same to be protested and dishonored, and notice of dishonor to be issued and sent to the payees, when there was more than enough money to the credit of the petitioner to pay the said checks, and that the defendant thereby slandered and injured the credit of the petitioner in untruthfully, falsely, and maliciously representing that he did not have sufficient funds to his credit in said bank whereby to pay said checks which he had drawn. The petition further alleged:

"That by these said several false and malicious acts, sayings, and doings, using the term 'malicious' in the sense of a reckless disregard of the rights of your petitioner to his good name and character for fair business dealings and probity, the said defendant bank has damaged him in the sum of $10,000."

Defendant filed an exception of no cause of action, which was referred to the merits. Defendant then answered, pleading the general issue, but admitting that, when the said four checks were presented, refused payment, and protested as alleged, the plaintiff had, or should have had, to his credit on the books of the bank a sum more than sufficient to pay all of said checks. The defendant admitted in the answer that on July 5, 1910, the bank received a deposit of $1,123.96 intended for the credit of Joseph H. Spearing, and that said amount was through error of a bookkeeper credited to J. Zach Spearing, the person who made the deposit. Defendant further averred that this mistake was not known to the paying teller and other officers of the bank, and that, when said four checks were presented, there were not sufficient funds, as appeared on the books of the bank, to the credit of Joseph H. Spearing to pay said checks, and that, therefore, they were thrown out.

Defendant further averred that, when the error was discovered, they immediately wired the banks, which had forwarded said checks for collection, to disregard the protest no-

129 LA.—20

tices sent them, and that said checks were placed to the credit of said banks and charged to the account of Joseph H. Spearing.

The defendant further averred that it did not act wantonly or maliciously, but did everything in its power to correct the error, at the same time writing to the plaintiff explaining that the mistake was due entirely to a clerical error.

The cause was tried, and the plaintiff has appealed from a verdict and judgment in favor of the defendant.

### Motion to Dismiss.

[3] The defendant has moved to dismiss the appeal on the ground that the Supreme Court has no jurisdiction ratione materiæ. The amount in dispute is to be determined from the allegations and prayer of the petition. In this case the amount sued for is the sum of $10,000. The contention that the amount in dispute is to be determined from the allegations in the petition and the proof adduced on the trial of the cause is not well founded. In the case of J. Earl Rogers v. National Calendar Co., 56 South. 421,[1] recently handed down, we held that:

"Allegations as to amount will not control, where the nature of the case, and the failure of the plaintiff to adduce evidence to fix the quantum, indicates that he could not reasonably have expected to have recovered more than nominal damages."

In the case at bar neither the nature of the case nor the conduct of the plaintiff during the trial leads to any such conclusion. The motion to dismiss is therefore overruled.

### On the Merits.

In July, 1910, plaintiff was the executive and administrative head of the Sewanee Military Academy, at Sewanee, Tenn. His duties as such involved the receipt and expenditure of a considerable sum of money annu-

---

[1] Ante, p. 504.

ally. The item alone of uniforms for cadets required the disbursement of several thousand dollars every year. Plaintiff had been a depositor of the defendant bank and its predecessor for nearly 30 years. On July 1, 1910, the plaintiff had at his credit in said institution a balance of $83.08. Plaintiff having made arrangements with his brother, J. Zach Spearing, Esq., of the city of New Orleans, for the deposit of $1,123.90 to his credit in defendant bank not later than July 5, 1910, drew on said bank his four different checks one for $500 to order of the First National Bank of Shreveport, one for $33.75 to the order of W. J. Feeley & Co., one for $150 to the order of the Bank of Sewanee, Tenn., and one for $20 to the order of the Fechheimer Bro. & Co.

On July 5, 1910, J. Zach Spearing drew a check on the defendant bank for $1,123.96 to the order of Joseph H. Spearing. This check was signed, "J. Zach Spearing, p. pro. M. McPeake," and was indorsed "For deposit Joseph H. Spearing per M. McPeake." The check was handed to the receiving teller of the defendant bank, and was correctly entered on the deposit slip as "Deposited by Joseph H. Spearing." The deposit, however, was through error or mistake of an assistant bookkeeper placed to the credit of J. Zach Spearing. The bank had two depositary departments, one for city and the other for country depositors. The deposit in question was made in the city department, and the bookkeeper, not finding the name of Joseph H. Spearing on his ledger, jumped to the conclusion that the deposit was intended for J. Zach Spearing, the only Spearing whose name appeared on his books.

On July 8, 1910, the check for $500 was duly presented to defendant bank for payment, which was refused for want of sufficient funds of the drawer. The check was duly protested, and notice of dishonor mail-ed to the First National Bank of Shreveport and to J. H. Spearing.

The other three checks were duly presented to defendant bank for payment on July 11, 1910, which was refused for want of sufficient funds of the drawer. The three checks were duly protested, and notice of dishonor mailed to the drawer, payee, and other indorsers.

Plaintiff, having received notice of the dishonor of the check for $500, wired J. Zach Spearing for an explanation. Mr. Spearing being absent, his office representative carried the message to the defendant bank, and its officers made an investigation, and discovered the error in the account of the plaintiff. On the same day the defendant wired plaintiff, as follows:

"Referring your telegram date to J. Zach Spearing, check five hundred refused through error. Have wired parties to whom check was returned to forward us for payment with all costs."

Defendant also on the same day wrote to plaintiff, as follows:

"We beg to advise that upon investigation we find that Mr. J. Zach Spearing's office deposited with us on the 5th inst. $1,123.96, for your credit, which deposit through error on the part of our bookkeeping department, was credited to the account of Mr. J. Zach Spearing. This error was discovered only to-day, after we had started an investigation in connection with three checks of yours, for $150, $33.75 and $20 respectively. You may have received notice of the nonpayment of these items, but they have not left our hands and we have paid them with all costs thereon, and have wired each of the sending banks that the items were protested through error on our part and that they are now paid. We have also telephoned the First National Bank of Shreveport, La., holding the $500 item and Mr. Bayersdoffer, their vice president, has answered us that the same would be promptly forwarded us for payment.

"Upon discovery of our error, we promptly wired you that we were taking the necessary steps to correct our error and protect the checks drawn by you.

"It is most humiliating and embarrassing to us that an error of this kind has occurred in our institution, and we most humbly apologize for any annoyance that you may have been caused in the premises. We feel assured,

however, that you realize that try as hard as we may, errors will sometimes crop in.

"We await your further valued favors and remain," etc.

It appears that the three checks protested on July 11, 1910, had not been returned, and on the next day were paid by the defendant bank, which wired and wrote the three sending banks and the plaintiff that the checks had been protested through error, and had been paid. On the same day the defendant bank telephoned the First National Bank of Shreveport, La., that the check for $500 had been protested through error, and would be paid on presentation. But the original payees of the other three checks to whom notices of dishonor had been sent were never notified that the checks had been protested through error.

[1] The protest of the four checks was the result of a clerical error on the part of the bookkeeper of the defendant, which was not known to its offices until July 12, 1910. This error, however, was an act of negligence, for which the defendant must respond in damages. The extent of that responsibility must be determined from the evidence adduced on the trial of the case.

The authorities cited by counsel on both sides announce the rule that where a check of a merchant or trader has been protested for want of funds, although occasioned by a mere mistake in bookkeeping, more than nominal damages may be given without proof of actual loss or damage. Schaffner v. Ehrman, 139 Ill. 109, 28 N. E. 917, 15 L. R. A. 134, 32 Am. St. Rep. 192; Svendsen v. Bank of Duluth, 64 Minn. 40, 65 N. W. 1086, 31 L. R. A. 552, 58 Am. St. Rep. 522; James Co. v. Continental National Bank, 105 Tenn. 1, 58 S. W. 261, 51 L. R. A. 255, 80 Am. St. Rep. 857; Third Nat. Bank v. Ober, 178 Fed. 678, 102 C. C. A. 178. Where the depositor is not a merchant or trader, there is no such presumption.

The common-law rule seems to be that such depositor must allege and prove special damages, and then will be entitled to recover substantial damages. Schaffner's Case, 139 Ill. 109, 28 N. E. 917, 15 L. R. A. 137. But the same case cited 3 Am. & Eng. Ency. Law, p. 226, as follows:

"The depositor, by proving special loss, may recover special damages from the bank for its breach of duty, but, if unable to do so, he may recover such temperate damages as will be a reasonable compensation for the injury he has sustained. * * *

"Where a bank refuses to honor a check of its depositor without legal cause, the latter is entitled to recover substantial damages [citing Patterson v. Marine Nat. Bank, 130 Pa. 419, 18 Atl. 632, 17 Am. St. Rep. 778, and other authorities]."

In 5 Cyc. 535, published in 1902, the general rule is thus stated:

"If the bank neglect or refuse to pay to the order of a depositor, where the latter has sufficient funds on deposit and no other good excuse exists, the depositor can maintain an action against the bank for the money, and is entitled to recover substantial damages for such refusal."

All the common-law authorities agree that nominal damages may be recovered in every case of neglect or refusal to pay the check of a depositor where he had sufficient funds on deposit in the bank to meet the check.

In the leading case of Rolin v. Steward, 14 C. B. 595, an action for damages for the wrongful dishonor of a check was likened to "an action for slander of a person in the way of his trade." See James Company v. Continental Nat. Bank, 105 Tenn. 1, 58 S. W. 261, 51 L. R. A. 258, 259, 80 Am. St. Rep. 857, as to analogy between the two actions. Such wrongful dishonor is just as efficient in imputing dishonesty or insolvency to the customer as if either had been charged against him by word of mouth. Ib. In the case at bar, the action is founded on quasi slander, without intentional wrong, and is governed by the rule that:

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." C. C. 2315.

Under this broad principle of equity, there can be no question of plaintiff's right to recover any damages, whether special or general, that he has alleged and proved. Plaintiff's action is for general damages, which have been defined "to be such as the jury may give when the judge cannot point out any measure by which they are to be assessed, except the opinion and judgment of a reasonable man." Rolin v. Steward, supra; Schaffner Case, 139 Ill. 109, 28 N. E. 917, 15 L. R. A. 137, 32 Am. St. Rep. 192. The plaintiff, not being a merchant or trader, must prove that he has sustained injury to his credit and reputation as a business man. This we think he has done by showing the nature of his business, the wrongful dishonor of his checks by the defendant bank, and that notices of dishonor were sent to all the indorsers on the four checks, including the original payees, to whom plaintiff had given them in the usual course of business. The vice president of the First National Bank of Shreveport testified that, considering the reputation and position of the drawer, he did not think that the credit of the plaintiff had been injured by the dishonor of his check for $500.

This opinion is based on the premise that the reputation and position of the drawer was too good to be injured by the dishonor of his checks. The cashier of the Sewanee Bank testified that on July 7, 1910, the check of plaintiff for $150 was placed to his credit and drawn against, and that about July 12, 1910, he received notice of its dishonor. The witness describes the effect of notice on him as follows:

"The said notice of protest was a great surprise to me, as up to that date Mr. Spearing, though a comparative stranger to me personally, had with us all the credit he desired; that the effect of the receipt of said notice of protest was, of course, to make me seriously doubt the business methods of one who would deposit a check against a bank in which he did not have funds with which to pay it and then draw checks against that deposit. thus overdrawing his account with us."     .

The same witness further testified:

"I have not received at any time a notice by wire or letter from the Whitney-Central National Bank or any one representing the said bank, to the effect that said check for $150 was protested through error of said Whitney Bank, or that said Spearing had funds in said Whitney Bank to credit of his account sufficient to pay said check."

Wm. J. Feeley, to whose firm the check for $33.75 was issued, testified as follows:

"The matter did not come to my knowledge until some time later after the check was protested, and our firm received notice from a notary public in New Orleans of the protesting of the check about the dishonor of the same that the bank had refused to pay it. I have never received notice of any kind from the bank. The effect of notice of the dishonor of a check under the circumstances mentioned in interrogatory 1 is that immediately a record was made on our books that no further credit is to be extended to the party whose check is dishonored. * * * We do not care to do business with anybody who sends us worthless checks. The credit of such a person is destroyed at once with this concern."

The natural effect of the dishonor of a check is to damage the credit and reputation of the drawer in business circles. That the plaintiff was injured by the dishonor of his four checks is a logical inference from the evidence before us. The fact of dishonor was made known to bankers and business men in several cities, and in the small town of Sewanee where the drawer resides, must have occasioned very unfavorable comments on his reputation as a business man.

[2] That the dishonor was the result of clerical error, and that the bank attempted to repair the injury, is no excuse, but may be considered in mitigation of damages.

Under the circumstances of the case, we consider an award of $300 damages as reasonable.

It is therefore ordered that the judgment below be reversed, and it is now ordered that the plaintiff, Joseph H. Spearing, do have and recover of the defendant, the Whitney-Central National Bank, the sum of $300, with 5 per cent. per annum interest thereon from the date of this decree, and all costs.