IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-30257

_____

JOHN J. GRISAFFI, JR.,

Plaintiff-Appellee/Cross-
Appellant,

versus

DILLARD DEPARTMENT STORES, INC.,

Defendant-Appellant/Cross-
Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

(January 23, 1995)

Before POLITZ, Chief Judge, and HIGGINBOTHAM and DeMOSS, Circuit
Judges.

HIGGINBOTHAM, Circuit Judge:

In this diversity case, we consider the obligations of
landlord and tenant under Louisiana law. We conclude that the
Louisiana Supreme Court would not imply a duty to continue
operation of a retail store in a percentage-of-sales rental lease
where the tenant has the right to sublease. We reverse the
district court's contrary conclusion. We affirm an award to the
tenant of base rentals paid after a leaky roof made the premises
unusable.

Holmes Co. leased 23,400 square feet in the Tammany Mall in Slidell, Louisiana from Commercial Properties Development Corporation in 1983. The ten-year lease, which Commercial wrote, set rent at $2 per square foot per year, plus 2% of gross sales between $2,340,000 and $3,735,000, plus 1% of gross sales above $3,735,000. The lease did not address subletting or any obligation of Holmes to operate a retail store throughout the lease term. Until May 1989, Holmes operated The Budget Store on the leased premises, clearing merchandise from other stores at bargain prices.

In May 1989, Dillard bought all of Holmes's stock. Dillard immediately closed The Budget Store because it considered it unprofitable and because the roof leaked. Dillard continued to pay base rentals and retained the keys but did not use the premises. It did not complain about the leaky roof until February or March 1990.

Grisaffi, as Commercial's successor in interest, filed this diversity suit against Dillard for payment of percentage rentals that Grisaffi would have received if Dillard had continued to use the premises as a store. Dillard counterclaimed for cancellation of the lease and reimbursement for rentals paid since May 1989-- when, Dillard says, the leaky roof made the premises unusable. After a bench trial, the judge (i) ruled that Dillard had breached an implied duty of continuous operation, (ii) awarded damages based on estimated percentage rentals that Grisaffi would have received if Dillard had continued to run the store, (iii) held that Grisaffi

breached his obligation to keep the premises fit for retail use in May 1993, and (iv) awarded Dillard base rentals it had paid after that date.  Both parties appeal.

## II.

Good faith performance is an implied requirement of every contract under Louisiana law.  La. Civ. Code Ann. art. 1983. Grisaffi argues, and the district court held, that this good faith obligation includes an implied duty of continuous operation unless continued operation would be unprofitable.  This argument relies heavily on two Louisiana cases. The first case, Selber Bros., Inc. v. Newstadt's Shoe Stores, 14 So. 2d 10, 12 (La. 1943), held that a lessee under a percentage-rental lease violated its duty of good faith by holding an unusual clearance sale, opening a new store one block away, and closing the old store two months before the lease ended.  The second case, Slidell Inv. Co. v. City Prods. Corp., 202 So. 2d 323, 325 (La. Ct. App.), writ denied, 204 So. 2d 572 (La. 1967), held a lessee under a percentage-rental lease liable for closing its business on the leased premises and reopening across the street.

These cases do not hold that the duty of good faith under a percentage-rental lease implies a duty of continuous operation. Both Slidell and Selber suggest that a lessee may, in good faith, close an unprofitable store.  More to the point, the lessons of Slidell and Selber are in their facts--facts that support a finding of bad faith.  In each case, the lessee shut down a store at one

3

location to open an identical store at a nearby location to take advantage of more favorable lease terms. In Slidell, the lessor had built the shopping center specifically for the lessee. Given these special circumstances, we are not persuaded that these two cases collapse good faith into an implied duty of continuous operation. See Wilson v. Cost+ Plus of Vivian, Inc., 375 So. 2d 683, 686-87 (La. Ct. App. 1979) (interpreting Slidell and Selber, and holding that absent express continuous occupancy clause, lessee may close business unless it then moves to another location); Riverside Realty Co. v. National Food Stores of Louisiana, Inc., 174 So. 2d 229, 233 (La. Ct. App.) (interpreting Selber as resting on diversion of business to another outlet), writ ref'd, 175 So. 2d 647 (La. 1965).

Even when there is no breach of the broader duty of good faith, Grisaffi argues, Louisiana law implies a duty of continuous operation in percentage rental leases when there is no lease term authorizing subletting. Dillard replies that a right to sublet is inconsistent with an implied duty of continuous operation, because the duty of continuous operation is a personal one. See Cascade Drive Ltd. Partnership v. Wal-mart Stores, Inc., 934 F.2d 61, 62 (5th Cir. 1991); Riverside Realty, 174 So. 2d at 231. The argument continues that, since the lease is silent about subletting, the tenant has a right to sublease. La. Civ. Code art 2725 ("The lessee has the right to underlease, or even to cede his lease to another person, unless this power has been expressly interdicted."). Grisaffi in turn argues that a right to sublet is

4

inconsistent with a duty to continue the tenant's business only when, as in Cascade, the lease expressly confers the right to sublet. Cascade does not, he claims, apply to this lease because the right to sublease arises by operation of law rather than from an express clause. We disagree. There is no relevant reason to distinguish between an express right to sublease and an implied one--each is equally inconsistent with a duty of continuous operation. Where a contract is silent, courts must assume that the parties intended to bind themselves to any terms implied by law. La. Civ. Code Ann. art. 2054.

                                III.

Dillard contends that the roof leaks were severe and counterclaimed for a refund of rent paid. The district court agreed, finding that substantial roof leaks caused recurring damage and impaired the operation of the store. We are persuaded that the district court's factual finding that the leaky roof made the premises unusable as of May 1993 was not clearly erroneous. Grisaffi replies that in any event Dillard was not entitled to reimbursement of rent because it retained keys and periodically inspected the premises, negating its claim of abandonment. We are not persuaded. A tenant can cancel a lease and receive a refund of rent retroactive to the date of judicial demand even if he retains keys to the leased premises. Friendly Finance, Inc. v. Cefalu Realty Inv., Inc., 303 So. 2d 558, 562 (La. Ct. App. 1974);

                                5

<u>Friendly Finance, Inc. v. Cefalu Realty Inv., Inc.</u>, 278 So. 2d 584, 586 (La. Ct. App.), <u>writ ref'd</u>, 281 So. 2d 747 (La. 1973).

We REVERSE the judgment's award to Grisaffi and AFFIRM the judgment's award on the counterclaim to Dillard.

REVERSED IN PART AND AFFIRMED IN PART.